Liliuokalani Martin (SBN 292778)
lili@downtownlalaw.com
**DOWNTOWN LA LAW GROUP, LLP**
540 South Sante Fe
Los Angeles, California 90013
Tel.: (213) 389-3765
Fax.: (213) 389-2775

Attorneys for Plaintiff
BRITTNEY JOHNSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNEY JOHNSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DARKNESS VENTURES, LLC, a New York limited liability company; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:23-cv-09378-JAK-SSC<br><br>**PLAINTIFF BRITTNEY JOHNSON'S NOTICE OF MOTION AND MOTION TO APPROVE PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LILIUOKALANI MARTIN; [PROPOSED] ORDER**<br><br>Date:          December 1, 2025<br>Time:          8:30 a.m.<br>Courtroom:   10C<br><br><br>Complaint Filed: March 6, 2023<br>Trial: None set<br>Post-Mediation Status Conference: October 27, 2025 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on November 27, 2025, at 8:30 a.m. in Courtroom 10C of the above-entitled Court located at 350 W First Street, Courtroom 10C, Los Angeles, CA 90012, Plaintiff Brittney Johnson will move this Court for an order approving on the PAGA settlement reached in this case.

PLAINTIFF BRITTNEY JOHNSON'S MOTION TO APPROVE PAGA SETTLEMENT

This motion will be, and hereby is, made pursuant to Labor Code section 2699(l)(2) on the grounds that, effective June 27, 2016, all PAGA settlements must be reviewed and approved by the Court, the Parties' PAGA settlement of this case is contingent upon on this Court's approval and on the further grounds that Defendant does not oppose the relief requested.

The motion shall be based on this notice, the memorandum of points and authorities, declaration of Liliuokalani Martin, and exhibits filed concurrently herewith, on all records on file in this case, and on such other evidence as may properly come before the Court at or before the time of the hearing of this motion.

Dated: October 21, 2025          **DOWNTOWN LA LAW GROUP, LLP**

By: /s/Liliuokalani Martin
Liliuokalani Martin
Attorney for Plaintiff
BRITTNEY JOHNSON

PLAINTIFF BRITTNEY JOHNSON'S MOTION TO APPROVE PAGA SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND STATEMENT OF FACTS

Plaintiff BRITTNEY JOHNSON (hereinafter "Plaintiff" or "Brittney") brought this action asserting violations of the Labor Code, including failure to pay wages, failure to pay minimum wages, failure to pay overtime, failure provide meal and rest periods, failure to provide itemized wage and hour statements, for waiting time penalties, and failure to permit inspection of personnel and payroll records as well as violation of unfair competition under California Bus. & Prof. Code §17200, and a cause of action under the Private Attorney General Act ("PAGA"), against her former employer, Defendant DARKNESS VENTURES LLC, a New York Limited Liability Company (hereinafter "Defendant") on March 6, 2023. Plaintiff also alleged claims for discrimination, retaliation, failure to prevent discrimination, and retaliation, failure to accommodate, failure to engage in good faith interactive process in violation of §§12940, as well as retaliation in violation of Labor Code section 98.6 and 1102.5 and 1102.6, and wrongful termination in violation of public policy.

Specifically, Plaintiff alleged that she was misclassified as an exempt employee because she spent more than 51% of her time performing non-exempt duties and worked approximately 6 hours of overtime per week all while being paid a flat weekly salary.  Because she was misclassified as an exempt employee, Plaintiff was not paid the minimum wages, overtime wages, unpaid meal and rest breaks.  Defendant denies all of Plaintiff's allegations.

On or about November 6, 2023, Defendant filed their Answer to the complaint. On November 6, 2023, Defendant removed the action to Federal Court.  On December 17, 2024, the Plaintiff and Defendant (collectively the "Parties") participated and engaged in an all-day mediation session that was presided over by Michael Diliberto, Esq., an experienced mediator of wage and hour PAGA actions.  Though the Parties engaged in settlement discussions in good faith, they were unable to agree to a

resolution of the matter. However, the Parties were able to reach an agreement shortly afterwards with Michael Diliberto's assistance.

On October 15, 2025, the Parties reached a settlement in this action, which includes attorneys' fees and costs, in full and final settlement of all claims in this action. The Parties entered into a Settlement Agreement and General Release ("Settlement Agreement"). As part of the Settlement Agreement, the Defendant agreed to pay a total settlement amount of $91,000.00 as a final resolution of all of Plaintiff's PAGA claims including administration costs, attorney's fees and costs, and $1,000.00 enhancement award to Plaintiff for bringing the PAGA claim. 33% or $30,333.30 of the total settlement amount will be paid to Plaintiff's counsel for attorney's fees. Costs incurred in litigating the PAGA claim, including settlement administration costs, will not exceed $10,000.00. The Parties agreed to a Net Settlement Amount ("NSA") to be allocated to the resolution of Plaintiff's PAGA claim as brought forth in this action, with Seventy-Five Percent (75%) paid to the California Labor and Workforce Development Agency ("LWDA"), and Twenty-Five Percent (25%) of the NSA distributed based on the pro rata number of Pay Periods worked by each "Aggrieved Employee," which in total is 187, during the PAGA Period, which was between December 31, 2021 through September 16, 2024. The PAGA settlement is contingent upon this Court's approval of the PAGA settlement portion.

In the Settlement Agreement, the Parties agreed that "Aggrieved Employees" means all current and former non-exempt hourly employees who worked in California employed by Darkness Ventures LLC, including Plaintiff, during the period from December 31, 2021, through the date of entry of a Court order granting approval of this settlement.

Pursuant to the Labor Code section 2699(l)(2), the proposed settlement shall be submitted to the LWDA while it is submitted to the Court, and the LWDA is being served with this motion.

PLAINTIFF BRITTNEY JOHNSON'S MOTION TO APPROVE PAGA SETTLEMENT

Plaintiff now brings this motion for the approval of the PAGA aspect. For the reasons set forth below, the settlement amount allocated to the PAGA penalties is fair and reasonable, and Plaintiff respectfully requests that this Court grant this motion.

## II.    LEGAL ANALYSIS

### A.    <u>The Court Should Approve the Settlement of the PAGA Portion of This Case Because the Amount Allocated to PAGA Is Reasonable</u>

A settlement reached between the parties on a PAGA claim is subject to court review and approval.  Cal. Lab. Code §2699(1).  However, the PAGA does not set forth the factors that should be considered when determining whether to approve a settlement other than the amount paid to settle a claim for PAGA penalties should be allocated as twenty-five percent (25%) payable to the aggrieved employees on whose behalf penalties were recovered, and seventy-five percent (75%) payable to the LWDA.  Lab. Code §2699(i).

As explained by the California Supreme Court in *Arias v. Superior Court* (2009) 46 Cal.4th 969, the Parties are not obligated to follow the class action procedural rules in PAGA cases and therefore do not need to follow the class action procedures for obtaining an approval of the settlement.  *Arias v. Superior Court*, 46 Cal.4th at 984.  The settlement of Plaintiff's PAGA claim should be approved because it is fair, adequate and reasonable. See, *Kirkorian v. Borelli*, (1988, N.D. Cal) 695 F. Supp. 446, 451(opinion of experienced counsel is entitled to considerable weight).

This allocation for PAGA penalties payable to the LWDA is a fair and reasonable compromise of the PAGA penalties. Defendant continues to maintain that Plaintiff's claims lack merit.  They deny Plaintiff was misclassified as exempt and that Plaintiff was subject to overtime, wait-time and rest break violations as Plaintiff alleged. Thus, it argues, because Plaintiff is not aggrieved by any of the specific Labor Code violations alleged in the PAGA claim, she does not have standing to maintain the PAGA action.  Defendant could try to argue that the only

evidence of wrongdoing is Plaintiff's highly individualized and anecdotal evidence that she was not able to take any meal and rest breaks but was ultimately relieving the non-exempt employees to allow them to take their meal and rest breaks and may argue that it is not sufficient to maintain a PAGA claim. Further, Defendant may also argue that the plaintiff was never required or authorized to work overtime and that is not a maintainable PAGA claim. Defendant argues that Plaintiff performed exempt duties more than 50% of the time and therefore she was not entitled to overtime compensation.  Furthermore, Defendant maintains that not all employees of Defendant were prevented from taking in statutory meal and rest breaks and the employees who did not take their meal and rest breaks made the independent to do so.  Plaintiff's counsel considered that even if Plaintiff prevailed on the merits of her PAGA claim, Defendant could argue that the Court should exercise its discretion, under Labor Code § 2699(e), to reduce the amount of civil penalties assessed. Plaintiff's counsel considered that Defendant could pervasively argue that any PAGA penalties assessed should be reduced because: (1) Defendant did not act knowingly or intentionally; (2) any errors in payment were not intentionally done as a result of oversight or mistake; (3) until this lawsuit was filed, no employees had complained; (4) none of Defendants' employees suffered any harm from or actual damage as a result of the conduct that forms the basis for Plaintiff's allegations.

Counsel for each party also considered the fact that the existence of numerous disputes of fact in this case made summary judgment unlikely for all parties.  As such, resolving the instant PAGA claim would require extensive litigation.  In the estimation of each party's counsel, the delay, inconvenience, distraction, and uncertainty imposed by these litigation demands would far outweigh the potential benefits of additional litigation. Specifically, Plaintiff would have needed to take the depositions of each of the potentially 187 employees who worked for the Defendant herein during the relevant time period, as well as the depositions of the various

PLAINTIFF BRITTNEY JOHNSON'S MOTION TO APPROVE PAGA SETTLEMENT

1    managers and supervisors at the locations where the "Aggrieved Employees"

2    worked.

3        While Plaintiff's counsel disagrees that Defendant's arguments are legally

4    correct or persuasive, counsel had to consider the foregoing facts and arguments and

5    how they might impact any judgment ultimately awarded if the Court were

6    persuaded by them.  Considering these arguments and the potential risks, Plaintiff's

7    counsel determined that the settlement was fair and reasonable.

8        The amount of the PAGA settlement is sufficient to serve the policy rationale

9    underlying the PAGA.  Indeed, the settlement amount is comparable (if not more

10   generous than) PAGA settlements involving much larger class claims.  For example,

11   in *Schiller v. David's Bridal, Inc*., 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist.

12   LEXIS 80776 (E.D. Cal. June 11, 2012), the Court approved a $10,000 PAGA

13   settlement in a case involving 3,327 class members. Similarly, in *Chu v. Wells

14   Fargo Investments, LLC*, No. C-05-4526 MHP, 2011 U.S. Dist. LEXIS 15821 (N.D.

15   Cal. Feb. 16, 2011), the Court approved a $10,000.00 PAGA settlement in a case

16   involving 2,752 class members. As such, because the instant settlement allocates

17   $91,000 for Plaintiff's PAGA claim, the amount of the settlement is very

18   reasonable.

19       Moreover, a trial court does not abuse its discretion by approving a settlement

20   of a case involving PAGA claims even when the settlement allocates zero of the

21   settlement recovery to the PAGA claims. *Nordstrom Com'n Cases* (2010) 186

22   Cal.App.4th 576, 589 [in class action case that included PAGA claims, trial court

23   did not abuse its discretion approving a settlement which does not allocate any

24   damages to the PAGA claims]. In *Nordstrom*, the case settled for millions of dollars

25   without any consideration to be paid for the PAGA claims alleged in the complaint.

26   Id. at 580. Regardless, the appellate court held that the trial court did not abuse its

27   discretion in approving the settlement. Id. at 589.

28

PLAINTIFF BRITTNEY JOHNSON'S MOTION TO APPROVE PAGA SETTLEMENT

1    Pursuant to the Settlement Agreement, and based upon the gross settlement

2    amount, the Parties determined and agreed that it was properly allocated to potential

3    individual PAGA penalties, distributed to the LWDA and Aggrieved Employees, as

4    required by the statute.  The allocation is much greater the PAGA allocation in other

5    PAGA settlements. See, e.g., *Franco v. Ruiz Food Products, Inc.*, (E.D. Cal. 2012)

6    2012 WL 591801 [approving PAGA allocation of $10,000 against a settlement fund

7    of $2.5 million (.4 percent)]; *Garcia v. Gordon Trucking, Inc.* (E.D. Cal. 2012) 2012

8    WL 5364575 [approving PAGA allocation of $10,000 against a settlement fund of

9    $3.7 million (.3 percent)]; *Garibaldi v. Bank of America, N.A.* (N.D. Cal. August 8,

10    2015) Case No. 13-cv-02223 (Dkt. 108) [approving PAGA allocation of $30,000

11    against a settlement fund of 9.5 million (.3 percent)]; *Chu v. Wells Fargo*

12    *Investments, LLC* (N.D. Cal. 2011) 2011 WL 672645 [approving PAGA allocation

13    of $10,000 against a settlement fund of 6.9 million (.1 percent)].

14    Hence, because the PAGA allocation in this case is similar to those regularly

15    approved by the Courts, it has a reasonable basis in law.

16    **B.    The Court Should Approve the Settlement of the PAGA Portion of**

17    **This Case Because the Rights of Other Aggrieved Employees Are**

18    **Not Prejudiced**

19    PAGA permits an aggrieved employee to sue an employer for civil penalties

20    associated with the employer's alleged violation of various California Labor Code

21    provisions.  Lab. Code §2699(a).   Notably, an employee who complies with the

22    PAGA pre-filing requirements may also seek penalties on behalf of other aggrieved

23    employees, but is not obligated to, and may instead seek the penalties on the

24    employee's sole behalf.  Lab. Code §2699(g)(1) ["an aggrieved employee may

25    recover the civil penalty … in a civil action… on behalf of himself or herself and

26    other current or former employees against whom one or more of the alleged

27    violations was committed"]; see *Howard Jarvis Taxpayers Assn. v. City of San*

28    *Diego* (2004) 120 Cal.App.4th 374, 386 ["the word 'may' is also used in the state

Constitution to indicate the existence of a right, but not an obligation"]; *Compton College Federation of Teachers v. Compton Community College Dist.* (1982) 132 Cal.App.3d 704, 711 ["The ordinary meaning of 'shall' or 'must' is of mandatory effect, while the ordinary meaning of 'may' is purely permissive in character"].

In that manner, a plaintiff seeking approval of a PAGA settlement is similar to a plaintiff seeking approval of a class action settlement, where the plaintiff who initially brought the action in a representative capacity is permitted, at any time prior to certification, to decline to continue acting in a representative capacity, and may settle his or her own claims.  See Cal. Rules of Court, Rule 3.770(a).  In such a case, the court may permit dismissal of class allegations without notice to any class members (who have not even been provided notice of the proceeding), upon determining that their rights will not be prejudiced.  Cal. Rules of Court, Rule 3.770(c).  See, e.g., *Pirjada v. Superior Court* (2011) 201 Cal.App.4th 1074, 1086 [in class action plaintiff settled individual claims with employer, dismissal permitted without notice to putative class members or discovery as to their identities was not abuse of discretion].

Here, this Court may determine that the rights of other aggrieved employees will not be prejudiced for two significant reasons.  First, unlike class actions where the class plaintiff prosecutes the action on behalf of the putative class members, Plaintiff here did not prosecute the action on behalf of the similarly-aggrieved employees.  In PAGA claims, the plaintiff employee prosecutes on behalf of the Labor Commission; the similarly-aggrieved employees have no private right of action in those penalties and no entitlement to them.  *Rope v. Auto–Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 650  ["In PAGA, the Legislature created an enforcement mechanism for aggrieved employees to file representative actions to recover penalties in cases in which there is no private cause of action as an alternative to enforcement by the Labor Commissioner"]; *Arias*, 46 Cal.4th at 980–987 [PAGA suit is a representative action and need not be brought as a class

1  action]. Approval of the settlement in this case will not prejudice the rights of any

2  others.

3  **C.     The PAGA Settlement Furthers the Purposes of the PAGA**

4  Finally, the Court should not place undue emphasis on the amount of the

5  PAGA allocation. The statute does not require this focus and, as amended in July

6  2016, the statute expressly contemplates the possibility of approval with no penalty

7  payments. Instead, this Court should focus on whether the settlement furthers the

8  purpose of the PAGA. If so, the PAGA allocation should be approved.

9  The LWDA has the discretion not to assess penalties in favor of other

10 enforcement priorities. *Scharwartz v. Poizner* (2010) 187 Cal.App.4th 592, 615 [an

11 agency's decision not to prosecute or enforce, whether through civil or criminal

12 process, is a decision generally committed to the agency's absolute discretion"].

13 The PAGA statute grants this Court the same discretion. See Lab. Code §

14 2699(e)(2).

15 Moreover, some of the top enforcement priorities of the LWDA are "to

16 vigorously enforce minimum labor standards in order to ensure employees are not

17 required or permitted to work under substandard unlawful conditions…" and "to

18 protect employers who comply with the law from those who attempt to gain a

19 competitive advantage at the expense of their works by failing to comply with

20 minimum labor standards." Lab. Code § 90.5(a). The priorities include ensuring

21 that labor code violations are paid and that unlawful pay practices stop. See Lab.

22 Code §§ 1193.5 and 1194.5 [referenced in the enforcement priorities set forth in

23 Labor Code §90.5(b)].

24 Here, the Settlement furthers the LWDA's enforcement of these priorities.

25 Plaintiff, while standing in the shoes of the LWDA, has obtained minimum and

26 overtime wages violations, meal and rest break violations and injunctive relief as to

27 Defendant's employment practices as to her, which further incentivizes Defendant

28

PLAINTIFF BRITTNEY JOHNSON'S MOTION TO APPROVE PAGA SETTLEMENT

to comply with the Labor Code moving forward.  Hence, the Settlement contributes to the enforcement of the Labor Code and should therefore be approved under PAGA.

## III.  CONCLUSION

In conclusion, the PAGA allocation is reasonable and more importantly furthers PAGA's purpose. Based on the foregoing, Plaintiff respectfully requests that the Court approve the settlement of the PAGA claims:

That out of a total settlement amount of $91,000.00 as a final resolution of all of Plaintiff's claims:

$1,000.00 of the total settlement amount will be paid to Plaintiff as an enhancement for bringing the claim.

$30,333.30 of the total settlement amount will be paid to Plaintiff's counsel for attorney's fees incurred in litigating the PAGA claim.

$10,000.00 of the total settlement amount will be allocated to settlement administration costs.

$49,666.70  of the total settlement amount will be allocated to Plaintiff's PAGA claim with Seventy-Five Percent (75%), or $37,250.03 allocated for PAGA paid directly to the California Labor and Workforce Development Agency ("LWDA"), and Twenty-Five Percent (25%), or $12,416.68, paid to the other "aggrieved employees".

"Aggrieved Employees" means all current and former non-exempt hourly employees in California identified by Darkness Ventures, LLC, in California, including Plaintiff, during the time period from December 31, 2021, through the date of entry of a Court order granting approval of this settlement.

PLAINTIFF BRITTNEY JOHNSON'S MOTION TO APPROVE PAGA SETTLEMENT

Dated: October 21, 2025          **DOWNTOWN LA LAW GROUP, LLP**


By: _____/s/ Liliuokalani Martin_____
    Liliuokalani Martin
    Attorney for Plaintiff
    BRITTNEY JOHNSON

## DECLARATION OF LILIUOKALANI MARTIN

I, Liliuokalani Martin, do declare:

    1.    I am an attorney at law licensed to practice before all courts of the State of California, and am an attorney in the litigation department of the DOWNTOWN LA LAW GROUP, counsel for Plaintiff herein.  I have personal knowledge of the facts set forth herein, including based upon my personal review of the case file, and if called upon as a witness could and would testify competently thereto.  I file this declaration in support of Plaintiff's motion for approval of PAGA settlement.

    2.    Plaintiff BRITTNEY JOHNSON (hereinafter "Plaintiff") submitted her PAGA Notice to the Labor and Workforce Development Agency ("LWDA") on April 20, 2022.

    3.    On March 6, 2023, Plaintiff brought this action asserting violations of the Labor Code, including failure to pay wages, failure to pay minimum wages, failure to pay overtime, failure to provide meal and rest breaks, failure to provide itemized wage and hour statements, waiting time penalties, failure to inspect personnel and payroll records, as well as violation of unfair competition under California Business & Profession Code §17200, and a cause of action under the Private Attorney General Act ("PAGA") against her former employer, Defendant DARKNESS VENTURES LLC, a New York limited liability company.  Plaintiff also alleged claims for discrimination, retaliation, failure to prevent discrimination and harassment, California Family and Rights Act retaliation, failure to accommodate, failure to engage in a good faith interactive process in violation of §§12940, as well as retaliation in violation of Labor Code section 98.6, 1102.5, and 1102.6, and wrongful termination in violation of public policy.

    4.    On or about August 27, 2025, Defendant filed its Answer to Plaintiff's Complaint on or about November 6, 2023.  From November 6, 2023, Plaintiff and Defendant (collectively, the "Parties") litigated this case, which included engaging in formal and informal discovery and settlement negotiations, and which further

1   included mediation with highly respected employment mediator Michael Diliberto

2   on December 17, 2024.

3        5.    Although the Parties did not settle at mediation, the Parties continued

4   with informal negotiations.

5        6.    On May 5, 2025, the Parties reached a settlement in this action, which

6   includes attorneys' fees and costs, in full and final settlement of all claims in this

7   action.  The Parties entered into a Settlement Agreement and Release. Exhibit A.

8        7.    Defendant agreed to pay a total settlement amount of $91,000.00 as a

9   final resolution of all of Plaintiff's PAGA claims including administration costs,

10  attorneys' fees and costs, and $1,000.00 enhancement award to Plaintiff for bringing

11  the PAGA claim.  33% or $30,030.00 of the total settlement amount will be paid to

12  Plaintiff's counsel for attorneys' fees, costs incurred in litigating the PAGA claim.

13  Settlement administrator costs will not exceed $10,000.00.

14       8.    The Parties agreed to allocate to the resolution of Plaintiff's PAGA

15  claim as brought forth in this action with Seventy-Five Percent (75%) or

16  $37,250.03, allocated for PAGA paid directly to the California Labor and

17  Workforce Development Agency ("LWDA"), and Twenty-Five Percent (25%), or

18  $12,416.68, paid to the other 187 "aggrieved employes".  The PAGA settlement is

19  contingent upon this Court's approval of the PAGA settlement portion. Attached

20  hereto as Exhibit B is a true and correct copy of the Settlement Agreement.

21       9.    The Parties agreed that "Aggrieved Employees" means all current and

22  former misclassified as exempt and non-exempt hourly employees working in

23  California identified by Darkness Ventures, LLC, including Plaintiff, during the

24  period from February 14, 2021 through the date of entry of a Court order granting

25  approval of this settlement.

26       10.   The proposed settlement shall be submitted to the Labor and Workforce

27  Development Agency ("LWDA") while it is submitted to the Court, and the LWDA

28  is being served with this motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on October 21, 2025, at Los Angeles, California.

/**s**/Liliuokalani Martin

Liliuokalani Martin

EXHIBIT A

1    Orlando J. Arellano (SBN 234073)
     Orlando.Arellano@jacksonlewis.com
2    Trevor R. Witt (SBN 278195)
     Trevor.Witt@jacksonlewis.com
3    **JACKSON LEWIS P.C.**
     725 South Figueroa Street, Suite 2800
4    Los Angeles, California 90017-5408
     Telephone:   (213) 689-0404
5    Facsimile:   (213) 689-0430

6    Attorneys for Defendant
     DARKNESS VENTURES, LLC
7

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

| 12 | BRITTNEY JOHNSON, an individual, | CASE NO.: **2:23–cv–09378 JAK (SSCx)** |
|----|----------------------------------|----------------------------------------|
| 13 | Plaintiff, | *[Assigned to District Judge John A. Kronstadt; Magistrate Judge Stephanie S. Christensen]* |
| 14 | vs. | |
| 15 | DARKNESS VENTURES, LLC, a New York limited liability company; and DOES | **STIPULATION OF SETTLEMENT OF PAGA CLAIMS AND RELEASE OF PAGA CLAIMS** |
| 16 | 1 through 20, inclusive, Defendants. | |
| 17 | | Complaint Filed: March 14, 2023 |

18

19

20

21

22

23

24

25

26

27

28

This Stipulation of Settlement of PAGA Claims and Release of PAGA Claims is entered into by and between Plaintiff BRITTNEY JOHNSON ("Plaintiff"), in her representative capacity on behalf of the State of California and fellow Aggrieved Employees and Defendant DARKNESS VENTURES, LLC. ("Defendant"):

## I.  **DEFINITIONS**

A.  "Actions" shall mean: 1) *BRITTNEY JOHNSON, an individual Plaintiff v. DARKNESS VENTURES, LLC, a New York limited liability company; and DOES 1 through 20 inclusive, Defendants,* Federal District Court for the Central District of California Court Case No. 2:23-cv-09378-JAK-SSCx which was originally filed on March 14, 2023 in the Los Angeles County Superior Court (Case No. 23STCV04894) and later removed to the Central District of California (the "Action").

B.  "Aggrieved Employees" shall mean All current and former non-exempt employees of Defendant in California during the PAGA Period.

C.  "Agreement" or "Settlement Agreement" means this Stipulation of Settlement of PAGA Actions and Release of PAGA Claims.

D.  "Court" means the Federal District Court for the Central District of California presiding over the Action.

E.  "Defendant" shall mean DARKNESS VENTURES, LLC.

F.  "Effective Date" means the date of entry by the Court of an order and judgment approving this Settlement.

G.  "Employee Data" means information regarding the Aggrieved Employees that Defendant will in good faith compile from its records and provide to the Settlement Administrator.  It shall be formatted in the manner requested by the Settlement Administrator and shall include sufficient information to effectuate this settlement, including but not limited to: each Aggrieved Employee's full name; last known address; Social Security Number; and the number of Pay Periods worked during the PAGA Period.

H. "Funding Date" shall mean sixty (60) calendar days after the Effective Date and is the date Defendant transfers the Gross Settlement Amount into the QSF in accord with the terms of this Agreement.

I. "Gross Settlement Amount" means Ninety-One Thousand Dollars and No Cents ($91,000.00) that Defendant must pay into the QSF in connection with this Settlement, inclusive of the PAGA Representative Service Award, Aggrieved Employee Payment, LWDA Payment, Plaintiff's Counsel Award and the Settlement Administration Costs.

J. "LWDA" means the California Labor and Workforce Development Agency.

K. "Net Settlement Amount" or "NSA" means the amount remaining from the Gross Settlement Amount deducting the PAGA Representative Service Award, the Settlement Administration Cost and the Plaintiff's Counsel Award. The NSA shall be used to satisfy the PAGA Representative's claims for civil penalties arising under PAGA asserted on behalf of the Aggrieved Employees and the LWDA. Twenty-five percent (25%) of the NSA shall be allocated to the Aggrieved Employees ("Aggrieved Employee Payment") and distributed based on the pro rata number of Pay Periods worked by each Aggrieved Employee during the PAGA Period. Seventy-five percent (75%) of the NSA shall be paid to the LWDA ("LWDA Payment").

L. "Notice of PAGA Settlement" means the notice to be provided to the Aggrieved Employees by the Settlement Administrator in the form set forth as Exhibit A to this Agreement.

M. "PAGA" means the California Labor Code Private Attorneys General Act of 2004, Labor Code § 2698 *et seq.*

N. "PAGA Payment Ratio" means the respective Pay Periods worked during the PAGA Period for each Aggrieved Employee divided by the total of the Pay Periods for all Aggrieved Employees during the PAGA Period.

O.  "PAGA Period" means the period between December 31, 2021 to the date the Court approves of the settlement of this Action as set forth in this Agreement.

P.  "PAGA Representative Service Awards" means the amount that the Court authorizes to be paid to the PAGA Representative, in addition to her Aggrieved Employee Payment, in recognition of her efforts and risks in assisting with the prosecution of the Actions and in exchange for executing the PAGA Representative Release described in Section III(C).

Q.  "Parties" means Plaintiff and Defendant, collectively, and "Party" shall mean either Plaintiff or Defendant, individually.

R.  "Pay Period" for purposes of calculating the distribution of the Aggrieved Employee Payment, as defined herein, means any biweekly, semi-monthly or weekly period in which Aggrieved Employees received wages during his/her employment with Defendant during the PAGA Period.

S.  "Plaintiff" or "PAGA Representative" shall mean BRITANY JOHNSON.

T.  "Plaintiff's Counsel" shall mean Downtown L.A. Law Group, LLP.

U.  "Plaintiff's Counsel Award" means the award of attorneys' fees and reimbursement of litigation expenses that the Court authorizes to be paid to Plaintiff's Counsel for the services they have rendered to Plaintiff, the State of California and the Aggrieved Employees consisting of attorneys' fees not to exceed one-third of the Gross Settlement Amount as documented by Plaintiff's Counsel's billing records. Plaintiff's Counsel's application for the Plaintiff's Counsel Award is subject to Court approval, and a reduction in attorneys' fees, costs, awarded by the Court is not a basis for Plaintiff to void, rescind, or terminate this Agreement.

V.  "QSF" means the Qualified Settlement Fund established, designated and maintained by the Settlement Administrator to fund the Gross Settlement Amount.

Docusign Envelope ID: 49BFB2F4-A983-477A-B7D2-56226B30A7DF

W.    "Released PAGA Claims" means any and all claims that were or could have been asserted arising out of or relating to the allegations in Plaintiff's PAGA Notices and the operative Complaints in the Actions for PAGA penalties that occurred during the PAGA Period, including any potentially applicable claims for attorneys' fees for claims including the failure to pay wages under Labor Code sections 201 and 1184, failure to pay minimum wages under Labor Code sections 1182.12, 1194, 1194,2 and 1197, failure to pay overtime wages under Labor Code sections 510 and 1194, failure to provide meal and rest periods under Labor Code sections 226.7 and 512, failure to provide accurately itemized wage statements under Labor Code section 226, for waiting time penalties under Labor Code sections 201, 202, 203, failure to reimburse necessary business related costs and expenses under Labor Code section 2802, for collecting or receiving wages already paid under Labor Code section 221, for misclassification as an independent contractor under Labor Code section 226.8, for requiring employees or applicants to agree to terms or conditions known to be illegal under Labor Code section 432.5, for coercing or requiring employees to patronize the employer's business under Labor Code section 450, and for failure to permit inspection of personnel and payroll records under Labor Code sections 226 and 1198.5. The release as to the State of California and Aggrieved Employees only covers claims that arise under the Private Attorneys General Act and does not cover an Aggrieved Employee's individual Labor Code claims as set forth in Paragraph III(C) below. The release expressly excludes claims for vested benefits, wrongful termination, unemployment insurance, disability, social security, workers' compensation, and PAGA claims outside of the PAGA Period. Other than the released PAGA claims, in no event shall this release of the PAGA Release Claims in this Agreement release any

individual claims of any individual other than the Plaintiff as set forth in Paragraph III(C) below.

X.  "Released Parties" shall mean Defendant DARKNESS VENTURES, LLC, and all its present and former parent companies, subsidiaries, divisions, concepts, related or affiliated companies, shareholders, officers, directors, employees including supervisors and managers, agents, attorneys, insurers, successors and assigns, and any individual or entity which could be liable for any of the PAGA Release Claims.

Y.  "Settlement" means the disposition of the Action pursuant to this Agreement.

Z.  "Settlement Administrator" means ILYM GROUP, INC. The Settlement Administrator establishes, designates and maintains, as a QSF under Internal Revenue Code section 468B and Treasury Regulation section 1.468B-1, into which the amount of the Gross Settlement Amount is deposited for the purpose of resolving the claims in the Actions on behalf of the LWDA and the Aggrieved Employees. The Settlement Administrator shall maintain the funds until distribution in an account(s) segregated from the assets of Defendant and any person related to Defendant. *__All accrued interest shall be paid and distributed to the Aggrieved Employees as part of their respective share of the Aggrieved Employee Payment.__*

AA. "Settlement Administration Costs" means the amount be paid for the costs of administration of the Settlement from the Gross Settlement Amount not to exceed $10,000.00.

## II.  **RECITALS**

A.  On April 20, 2022, Plaintiff sent a Notice of Violations with the Labor and Workforce Development Agency (LWDA) and served the same on Defendant asserting violations of the Labor Code including sections 201,

202, 203, 226, 226.7, 226.8, 510, 512, 1174, 1182.12, 1194, 119.2, and 1197 ("PAGA letter").

B.    On March 6, 2023, Plaintiff filed a PAGA action, alleging various violations of the California Labor Code as asserted in her PAGA letter.

C.    On November 6, 2023 Defendant removed the action to Federal Court where it remains pending.

D.    On December 17, 2024, the Parties participated in mediation presided over by Michael Diliberto, Esq., an experienced mediator of wage and hour PAGA actions. The mediation concluded without a settlement. However, following mediation, each side represented by their respective counsel, with the assistance of Mediator Diliberto, continued negotiations until they agreed to a mediator's proposal to settle.

E.    On June 17, 2025, as part of the parties' tentative agreement, Plaintiff submitted a revised PAGA letter on June 17, 2025 adding certain Labor Code claims.

F.    On July 18, 2025, as part of the parties' tentative agreement, Plaintiff filed a First Amended Complaint adding various claims which were added to the PAGA letter.

G.    This Agreement replaces and supersedes the mediator's proposal and any other agreements, understandings, or representations between the Parties. This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or will be construed as an admission by Defendant that the claims in the Actions of Plaintiff or the Aggrieved Employees have merit or that Defendant bears any liability to Plaintiff or the Aggrieved Employees on those claims or any other claims, or as an admission by Plaintiff that Defendant's defenses in the Actions have merit.

Based on these Recitals that are a part of this Agreement, the Parties agree as follows:

## III.    TERMS OF AGREEMENT

A.    <u>Settlement Consideration and Settlement Payments by Defendant</u>.

1.    <u>Settlement Consideration</u>. In full and complete settlement of the Actions, and in exchange for the releases set forth below, Defendant and the Released Parties will pay the Gross Settlement Amount of Ninety One Thousand Dollars and No Cents ($91,000.00). The Parties agree that this is a non-reversionary Settlement and that no portion of the Gross Settlement Amount shall revert to Defendant. Except as provided for in Section III(A)(2) and pursuant to any individual settlement with Plaintiff, Defendant shall not be required to pay more or less than the Gross Settlement Amount.

2.    <u>Number of Aggrieved Employees and Pay Periods</u>. At the time of mediation, Defendant estimated that there were 187 Aggrieved Employees that collectively worked approximately 10,075 Pay Periods ("Projected Pay Periods") during the period of December 31, 2021 through September 16, 2024. In support of the motion for PAGA approval, Defendant will provide a declaration under penalty of perjury confirming the number of Aggrieved Employees and Pay Periods they worked during the PAGA Period. If at the time of submission of the declaration to Plaintiff's Counsel the pay periods during the PAGA Period exceeds more than 10% of the number for Projected Pay Periods stated above, either (a) the Gross Settlement Amount will increase proportionally, or (b) at Defendant's discretion, the parties will agree to an earlier ending of the PAGA Period than that set forth in Section I(O).

3. <u>Settlement Payment</u>. Defendant shall pay, via wire transfer, the Gross Settlement Amount to the Settlement Administrator on the Funding Date.

B. <u>Release by the Aggrieved Employees</u>. As of the Funding Date, in exchange for the consideration set forth in this Agreement, the Plaintiff, the LWDA and the State of California release the Released Parties from the PAGA Released Claims for the PAGA Period.

C. <u>Separate Individual Release by PAGA Representative</u>. Separate and apart from this Agreement, Plaintiff will enter into an individual settlement agreement releasing all claims she had or may have individually, except those being released via this Agreement.

D. <u>Conditions Precedent</u>: This Settlement will become final and effective only upon (1) sixty (60) days after the Court entering an order approving the Settlement, and (2) Defendant fully funds the Gross Settlement Amount.

E. <u>Nullification of Settlement Agreement</u>. If this Settlement Agreement is not approved by the Court, fails to become effective, or is reversed, withdrawn, or in any way prevents or prohibits Defendant from obtaining a complete resolution of the Released PAGA Claims, or if Defendant fails to fully fund the Gross Settlement Amount:

1. This Settlement Agreement shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and

2. None of the Parties to this Settlement will be deemed to have waived any claims, objections, defenses or arguments in the Actions.

F. <u>Tax Liability</u>. The Parties make no representations as to the tax treatment or legal effect of the payments called for in this Agreement. The Aggrieved Employees are not relying on any statement or representation by the Parties

in this regard. Aggrieved Employees understand and agree that they will be responsible for the payment of any taxes and penalties assessed on their respective share of the Aggrieved Employee Payments and will be solely responsible for any penalties or other obligations resulting from their personal tax reporting of the Aggrieved Employees Payments.

G.    Circular 230 Disclaimer.  Each Party to this Agreement (for purposes of this section, the "acknowledging party" and each Party to this Agreement other than the acknowledging party, an "other party") acknowledges and agrees that: (1) no provision of this Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department circular 230 (31 CFR part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Agreement, (b) has not entered into this Agreement based upon the recommendation of any other Party or any attorney or advisor to any other Party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party, and (3) no attorney or adviser to any other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

H.    Settlement Administrator.  The Settlement Administrator shall be responsible for: establishing and administering the QSF; calculating, processing and mailing payments to Plaintiff's Counsel, LWDA and Aggrieved Employees;

printing and mailing the Notice of PAGA Settlement to the Aggrieved Employees as directed by the Court; calculating, and distributing tax forms for the Aggrieved Employee Payments; providing declaration(s) as necessary in support of approval of this Settlement; and other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform. The Settlement Administrator shall keep the Parties timely apprised of the performance of all Settlement Administrator responsibilities.

I.    Employee Data.   No later than ten (10) calendar days after the Effective Date, Defendant shall provide the Settlement Administrator with the Employee Data.  The Settlement Administrator shall maintain the Employee Data as private and confidential except to carry out its duties to administer the Settlement. In no event will this information ever be shared with or provided to Plaintiff or Plaintiff's Counsel unless necessary to ensure Plaintiff's Counsel's ability to fulfill any obligations associated with this Settlement.

J.    Funding and Allocation of the Gross Settlement Amount.   Defendant is required to pay the Gross Settlement Amount on or before the Funding Date.

   1.    Calculation of Individual Payments to the Aggrieved Employees. Using the Employee Data, the Settlement Administrator shall add up the total number of Pay Periods for all Aggrieved Employees during the PAGA Period.  The respective Pay Periods for each Aggrieved Employee will be divided by the total Pay Periods for all Aggrieved Employees, resulting in the "PAGA Payment Ratio" for each Aggrieved Employee.  Each Aggrieved Employee's PAGA Payment Ratio will then be multiplied by the Aggrieved Employee Payment to calculate each Aggrieved Employee's estimated share of the Aggrieved Employee Payment.

2.  <u>Allocation of Individual Aggrieved Employee Payments</u>.  For tax purposes, individual Aggrieved Employee Payments shall be allocated and treated 100% as penalties and interest.  The individual Aggrieved Employee Payments shall not be subject to wage withholdings and shall be reported on IRS Form 1099s.

3.  <u>No Credit Toward Benefit Plans</u>.  The individual Aggrieved Employee Payments made to the Aggrieved Employees under this Settlement Agreement, as well as any other payments made pursuant to this Settlement Agreement, will not be utilized to calculate any additional benefits under any benefit plans to which any Aggrieved Employee may be eligible, including, but not limited to profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan.  Rather, it is the Parties' intention that this Settlement Agreement will not affect any rights, contributions, or amounts to which any Aggrieved Employee may be entitled under any benefit plans.

4.  <u>Mailing</u>.  Individual Aggrieved Employee Payments shall be mailed by regular First-Class U.S. Mail to the Aggrieved Employees' last known mailing address no later than fifteen (15) calendar days after the Funding Date.

5.  <u>Expiration</u>.  Any checks issued the Aggrieved Employees shall remain valid and negotiable for one hundred and eighty (180) days from the date of their issuance.  If an Aggrieved Employee does not cash his or her settlement check within 90 days, the Settlement Administrator will send a letter to such persons, advising that the check will expire after the 180th day, and invite that Aggrieved Employee to request reissuance in the event the check was destroyed, lost or misplaced.  In the event an individual Aggrieved Employee Payment check has not

been cashed within one hundred and eighty (180) days, the Settlement Administrator shall cause the aggregate sum represented by those uncashed checks to be sent to the California Controller's Unclaimed Property Fund in the name of the Aggrieved Employee.

6.    LWDA Payment.    The Settlement Administrator shall transmit the LWDA Payment to the LWDA as one lump sum payment, if by check, certified mail return receipt requested to Plaintiff's Counsel, within fifteen (15) calendar days of the Funding Date.

7.    PAGA Representative Service Award – In addition to the Individual Settlement Payment to be paid to Plaintiff, Plaintiff will each apply to the Court for an award of not more than $1,000.00, as the PAGA Representative Service Award. Defendant does not presently intend to oppose a PAGA Representative Service Award of not more than $1,000.00. The Settlement Administrator shall pay the PAGA Representative Service Award, either in the amount stated herein if approved by the Court or some other amount as approved by the Court, to Plaintiff from the Gross Settlement Amount no later than fifteen (15) calendar days after the Funding Date. Any portion of the requested PAGA Representative Service Award that are not awarded to the PAGA Representatives shall be part of the Net Settlement Amount and shall be distributed to Aggrieved Employees as provided in this Agreement. The Settlement Administrator shall issue an IRS Form 1099 — MISC to Plaintiff for their PAGA Representative Service Award. Plaintiff shall be solely and legally responsible to pay any and all applicable taxes on their PAGA Representative Service Award and shall hold harmless the Defendant from any claim or liability for taxes, penalties, or interest arising as a result of the PAGA Representative Service Award. The PAGA Representative Service

Award shall be in addition to Plaintiff's Aggrieved Employee Payment as an Aggrieved Employee. Approval of this Settlement shall not be conditioned on Court approval of the requested amount of the PAGA Representative Service Award. If the Court reduces or does not approve the requested PAGA Representative Service Award, Plaintiff shall not have the right to revoke the Settlement, and it will remain binding

8. **Plaintiff's Counsel Award.** Defendant understands a motion by Plaintiff's Counsel for attorneys' fees and costs not to exceed one-third of the Gross Settlement Amount currently estimated to be Thirty Thousand and Thirty Dollars and No Cents ($30,333.30.) from the Gross Settlement Amount will be filed. Any portion of the requested Plaintiff's Counsel Award that is not awarded to Plaintiff's Counsel shall be part of the Net Settlement Amount and shall be distributed to the LWDA and the Aggrieved Employees as provided in this Agreement. The Settlement Administrator shall distribute and pay the Plaintiff's Counsel Award to Plaintiff's Counsel from the Gross Settlement Amount no later than fifteen (15) calendar days after the Funding Date. Plaintiff's Counsel shall be solely and legally responsible to pay all applicable taxes on the payment made pursuant to this paragraph. The Settlement Administrator shall issue an IRS Form 1099 — MISC to Plaintiff's Counsel for the payments made pursuant to this paragraph. In the event that the Court reduces or does not approve the requested Plaintiff's Counsel Award, Plaintiff and Plaintiff's Counsel shall not have the right to revoke the Settlement, or to appeal such order, and the Settlement will remain binding.

9. **Settlement Administration Costs.** The Settlement Administrator shall be paid for the costs of administration of the Settlement from the

Gross Settlement Amount. The estimate of the Settlement Administration Costs is $10,000.00. The Settlement Administrator shall be paid the Settlement Administration Costs no later than fifteen (15) calendar days after the Funding Date.

K.    <u>Approval Motion</u>. Plaintiff's Counsel and Plaintiff shall use best efforts to file with the Court a Motion for Settlement Approval and Entering Judgment Finally Approving Settlement, within forty-five (45) days following the execution of this Agreement.

L.    <u>Notice of Settlement to LWDA</u>. In connection with the Motion for Settlement Approval, Plaintiff's Counsel shall submit this Agreement to the LWDA pursuant to California Labor Code section 2699(l)(2) at the same time it files a motion for approval of the Agreement with the Court. Plaintiff's Counsel shall within ten (10) days after the entry of the judgment or order approving this Settlement, submit the order approving the Settlement to the LWDA pursuant to California Labor Code section 2699(l)(3).

N.    <u>Review of Motion for Settlement Approval</u>. Plaintiff's Counsel will provide an opportunity for Counsel for Defendant to review the Motion for Settlement Approval, including the Order Granting Approval of the Settlement, and Judgment Finally Approving Settlement before filing with the Court. The Parties and their counsel will cooperate with each other and use their best efforts to affect the Court's approval of the Motion for Approval of the Settlement, and entry of Judgment.

O.    <u>Cooperation</u>. The Parties and their counsel will cooperate with each other and use their best efforts to implement the Settlement.

P.    <u>Interim Stay of Proceedings</u>. The Parties agree to stay all proceedings in the Actions, except such proceedings necessary to implement and complete the Settlement.

Q.  Amendment or Modification.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

R.  Entire Agreement.  This Agreement and any attached Exhibit constitute the entire Agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its Exhibit other than the representations, warranties and covenants contained and memorialized in this Agreement and its Exhibit.

S.  Authorization to Enter into Settlement Agreement.  Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  The persons signing this Agreement on behalf of Defendant represents and warrants that he/she is authorized to sign this Agreement on behalf of Defendant.  Plaintiff represents and warrants that she is authorized to sign this Agreement and that she has not assigned any claim, or part of a claim, covered by this Settlement to a third-party.

T.  Limited Disclosure: The Plaintiff/PAGA Representatives and PAGA Counsel will not make any public disclosure of the Settlement or Memorandum of Understanding until after the Settlement is approved by the Court. PAGA Counsel will take all steps necessary to ensure the Plaintiff/PAGA Representatives are aware of and will encourage the Plaintiff/PAGA Representatives to adhere to, the restriction against any public disclosure of the Settlement the contents of the Memorandum of Understanding or long form settlement documents until after the Settlement is approved by the Court.  Following approval of the Settlement, the Plaintiff/PAGA

Representatives and PAGA Counsel will not have any communications with the media other than to direct the media to the public records of the actions on file with the Court. PAGA Counsel will take all steps necessary to ensure the Plaintiff/PAGA Representatives are aware of, and will encourage the Plaintiff/PAGA Representatives to adhere to, the restriction against any media comment on the Settlement and its terms. PAGA Counsel further agree to not use the Settlement of this Action or any of its terms for any marketing purposes.

U.  Binding on Successors and Assigns. This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties, as previously defined.

V.  California Law Governs. All terms of this Agreement and the Exhibit and any disputes shall be governed by and interpreted according to the laws of the State of California.

W.  Counterparts. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves copies or originals of the signed counterparts.

X.  This Settlement Is Fair, Adequate and Reasonable. The Parties believe this Settlement is a fair, adequate and reasonable settlement of these Actions and have arrived at this Settlement after extensive, non-collusive arms-length negotiations, taking into account all relevant factors, present and potential.

Y.  Jurisdiction of the Court. The Parties agree that the Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing and

enforcing the settlement and all orders and judgments entered in connection with this Agreement.

Z.   <u>Invalidity of Any Provision</u>.  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

AA. <u>No Admissions by the Parties</u>. Plaintiff has claimed and continues to claim that the Released PAGA Claims have merit and give rise to liability on the part of Defendant. Defendant claims that the Released PAGA Claims have no merit and do not give rise to liability. This Agreement is a compromise of disputed claims. Nothing contained in this Agreement and no documents referred to and no action taken to carry out this Agreement may be construed or used as an admission by or against the Defendant or Plaintiff or Plaintiff's Counsel as to the merits or lack thereof of the claims asserted. Other than as may be specifically set forth herein, each Party shall be responsible for and shall bear its/his own attorneys' fees and costs.

IT IS SO AGREED, FORM AND CONTENT, BY PLAINTIFF:

DATED: _____    _____
                                  BRITTNEY JOHNSON

IT IS SO AGREED, FORM AND CONTENT, BY DEFENDANT:

DATED: 10/21/2025    *Arthur Cooperberg*
                                  ARTHUR COOPERBERG, VP of Finance/HR
                                  FOR DARKNESS VENTURES, LLC

///
///

enforcing the settlement and all orders and judgments entered in connection with this Agreement.

Z.   <u>Invalidity of Any Provision</u>.    Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

AA.   <u>No Admissions by the Parties</u>.   Plaintiff has claimed and continues to claim that the Released PAGA Claims have merit and give rise to liability on the part of Defendant.   Defendant claims that the Released PAGA Claims have no merit and do not give rise to liability.   This Agreement is a compromise of disputed claims.   Nothing contained in this Agreement and no documents referred to and no action taken to carry out this Agreement may be construed or used as an admission by or against the Defendant or Plaintiff or Plaintiff's Counsel as to the merits or lack thereof of the claims asserted.   Other than as may be specifically set forth herein, each Party shall be responsible for and shall bear its/his own attorneys' fees and costs.

IT IS SO AGREED, FORM AND CONTENT, BY PLAINTIFF:

DATED: _____10/21/25_____    _____
                                                            BRITTNEY JOHNSON

IT IS SO AGREED, FORM AND CONTENT, BY DEFENDANT:

DATED: _____    _____
                                                            ARTHUR COOPERBERG, VP of Finance/HR
                                                            FOR DARKNESS VENTURES, LLC

///
///

18

AGREED TO FORM BY COUNSEL:


DATED: _____          DOWNTOWN L.A. LAW GROUP, LLP

                                 By: _____
                                     Liliuokalani Martin
                                     Attorneys for Plaintiff and the PAGA Group


DATED: _____          JACKSON LEWIS, PC

                                 By: _____
                                     Orlando Arellano
                                     Attorneys   for   Defendant   DARKNESS
                                     VENTURES, LLC

AGREED TO FORM BY COUNSEL:

DATED: October 21, 2025                    DOWNTOWN L.A. LAW GROUP, LLP

                                           By: _____ *L Martin* _____
                                           Liliuokalani Martin
                                           Attorneys for Plaintiff and the PAGA Group

DATED: October 21, 2025                    JACKSON LEWIS, PC

                                           By: *Orlando J. Arellano /s/*
                                           _____
                                           Orlando Arellano
                                           Attorneys for Defendant DARKNESS
                                           VENTURES, LLC

STIPULATION OF SETTLEMENT OF PAGA CLAIMS AND RELEASE OF PAGA CLAIMS